IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| REBECCA JO SEALS, | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. 4:17-CV-792-CAN |
| | § | |
| v. | § | |
| | § | |
| COMMISSIONER, SSA, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this appeal under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for disability insurance benefits. After reviewing the Briefs submitted by the Parties, as well as the evidence contained in the Administrative Record, the Court finds that the Commissioner's decision should be **AFFIRMED**.

## BACKGROUND

### I.   PROCEDURAL HISTORY OF THE CASE

On February 17, 2015, Rebecca Jo Seals ("Plaintiff") filed an application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act") [TR 160-61].[1] Plaintiff alleged an onset-of-disability date of July 7, 2014 [TR 44, 160]. Plaintiff's insured status expires on December 31, 2019 [TR 17].[2] Plaintiff's application was initially denied by notice on March 18, 2015 [TR 98-101], and upon reconsideration on July 17, 2015 [TR 105-108]. Plaintiff

---

[1] The ALJ's decision notes Plaintiff's application date as February 17, 2015; however, certain other documents contained in the record recite that Plaintiff initially applied for disability on August 17, 2014 [TR 72, 85].
[2] Although the ALJ found that Plaintiff's insured status does not expire until December 31, 2019, other related records indicate that Plaintiff's insured status expired on December 31, 2018 [TR 85, 235].

requested a hearing before an Administrative Law Judge ("ALJ") on July 30, 2015 [TR 109-110], and the ALJ conducted the hearing ("Hearing") on July 7, 2016 [TR 31-71]. At Hearing, Plaintiff was represented by counsel, and the ALJ heard testimony from Plaintiff, her husband, and a vocational expert ("VE").

On September 7, 2016, the ALJ issued an unfavorable decision denying Plaintiff's application at step five, finding that Plaintiff is capable of performing the requirements of semi-skilled sedentary occupations [TR 12-30]. Plaintiff requested review of the ALJ's decision by the Appeals Council; the Appeals Council denied Plaintiff's request on September 6, 2017, making the decision of the ALJ the final decision of the Commissioner [TR 1-6].

On November 7, 2017, Plaintiff filed the instant suit [Dkt. 1]. On January 31, 2018, the Administrative Record was received from the SSA [Dkt. 9]. Plaintiff filed her Brief on February 20, 2018 [Dkt. 12]. The Commissioner filed its Brief in Support of the Commissioner's Decision on April 20, 2018 [Dkt. 13]. Plaintiff did not file a reply.

## II. STATEMENT OF RELEVANT FACTS

### 1. *Age, Education, and Work Experience*

Plaintiff was born on April 4, 1970, making her forty-four (44) years of age at the time of alleged onset, and forty-six (46) on the date of the ALJ's decision [TR 25, 39, 85]. Plaintiff's age classification was defined as "younger person" at all relevant times. *See* 20 C.F.R. § 404.1563(c). Plaintiff has at least a high school education and can communicate in English [TR 25, 42, 179, 181]. Plaintiff has prior work experience as a detention officer and/or account clerk [TR 24, 42, 181].

### 2. Plaintiff's Relevant Medical Records

In her application, Plaintiff asserts that she is disabled as a result of anterior cervical discectomy and fusion, depression, migraines, and herniated discs in her lower back [TR 180]. Of particular importance to this appeal are the medical source statements completed by Plaintiff's treating physicians, Drs. Muhammad Zulqarnain ("Dr. Zulqarnain") and Dr. Praveen Moolamalla ("Dr. Moolamalla"); as such, the Court details such records below, and also briefly outlines the opinions of the state agency medical consultants.

#### a. Treating Physician – Dr. Zulqarnain

On May 13, 2014, Dr. Zulqarnain completed a "Physician's Statement of Disability" [TR 443-45]. Therein, Dr. Zulqarnain indicated that Plaintiff had multiple cervical disc herniations and that she had decreased range of motion and neck and shoulder pain [TR 443-44]. He further opined that Plaintiff was completely prevented from engaging in gainful activity [TR 444].

On June 10, 2015, Dr. Zulqarnain completed a "Physical Residual Function Capacity Medical Source Statement" [TR 496-98]. In evaluating Plaintiff's physical capabilities, Dr. Zulqarnain opined that Plaintiff could rarely lift up to 10 pounds; occasionally climb stairs; would be off-task approximately 25% of an 8-hour workday; would be absent from work 5 days or more per month as result of her impairments; would likely be unable to complete an 8-hour work day 5 days or more per month; and could be expected to efficiently perform for 60% of an 8-hour work day [TR 496-98].

Dr. Zulqarnain completed a third medical source statement on June 23, 2016 [TR 611-14]. Dr. Zulqarnain reported that Plaintiff can sit for 15 minutes at one time; stand for 20 minutes at one time; and sit, stand/walk for less than 2 hours in an 8-hour work day [TR 612]. Dr. Zulqarnain

further indicated that Plaintiff would need to take unscheduled breaks during the work day; Plaintiff's legs needed to be elevated while sitting at all times; could rarely lift less than 10 pounds; could never twist, stoop, crouch/squat, climb stairs, or climb ladders; could never use her hands to grasp, turn, or twist objects, could never use fine finger manipulations, could never reach in front of body or overhead; would be off-task more than 25% of a typical work day; and would likely be absent more than four days per month [TR 612-14]. Dr. Zulqarnain also noted in a margin that "patient not in condition to work" [TR 612].

Dr. Zulqarnain's treatments notes dated between December 2015 and May 2016 indicate that Plaintiff's pain was well-managed with medication and that such medication allowed her to remain active with her activities of daily living [TR 562, 568, 573, 577, 588, 591, 599].

### b. *Treating Physician – Dr. Moolamalla*

On June 1, 2015, Dr. Moolamalla, Plaintiff's treating psychiatrist, completed a Mental Residual Functional Capacity Medical Source Statement [TR 486-90]. Dr. Moolamalla opined that Plaintiff was precluded from performing mental work-related tasks for 15% or more per day in several areas of understanding and memory; sustained concentration and memory; social interaction; and adaptation [TR 488-89]. Dr. Moolamalla completed a second medical source statement on July 11, 2016, which reported many of the same findings as his first medical source statement on June 1, 2015 [TR 622-25]. In addition to similar findings regarding Plaintiff's capabilities in mental work-related tasks, Dr. Moolamalla further opined that Plaintiff would be off task more than 30% of an 8-hour work day and would be absent and/or unable to complete an 8-hour workday five days or more per month [TR 624-25].

### c. *State Agency Medical Consultants – Drs. Wong, Murphy, Cremona and Ligon*

On March 13, 2015, state agency medical consultants ("SAMCs") Dr. Matthew Wong and

Dr. Frederick Cremona assisted in the initial-level agency determination of Plaintiff's medical conditions and functional limitations [TR 72-83]. According to Dr. Wong, Plaintiff could understand, remember, and carry out detailed but not complex instructions, as well as that Plaintiff could make decisions, attend and concentrate for extended periods of time, accept instructions, and respond appropriately to routine work settings. [TR 80]. Regarding Plaintiff's physical capabilities, Dr. Cremona opined that Plaintiff could perform sedentary work with certain postural limitations [TR 77-78]. Specifically, Dr. Cremona reported that Plaintiff could occasionally lift and/or carry 10 pounds, frequently lift and/or carry less than 10 pounds, stand and/or walk about 6 hours in an 8-hour workday, sit for about 6 hours in an 8-hour workday, and her ability to push and/or pull was unlimited (other than as stated by lift/carry) [TR 77]. On reconsideration, SAMC Drs. James B. Murphy and Laurence Ligon agreed with the initial assessment [TR 84-96].

### 3. Hearing Testimony

#### a. Plaintiff and Plaintiff's Husband's Testimony

At Hearing, counsel for Plaintiff advised the ALJ that Plaintiff did not meet a listing, and that Plaintiff's primary problem is myalgias, along with depression and anxiety [TR 38]. Plaintiff testified regarding her impairment(s) [TR 44-55]. Plaintiff testified that she is unable to sit or stand for very long [TR 44-45]. Plaintiff testified that she has pain that radiates down the back of her shoulders every day, resulting in a burning and aching sensation, for which she takes medication: Percocet and Soma [TR 45-46]. Plaintiff rated her pain at between seven or eight with her medications [TR 46]. Plaintiff testified that on a regular basis she visits her pain management doctor Dr. Muhammad Zulqarnain, as well as Dr. Praveen Moolamalla, her

psychiatrist [TR 46].³ Plaintiff identified no other doctors that she saw on a regular basis. Plaintiff further testified that her pain began after a 2012 back surgery, during which she had five discs replaced [TR 48, 52]. With respect to her depression and anxiety, Plaintiff testified she had problems with her memory and maintaining attention and concentration, as well as a decreased ability to multi-task [TR 49-50].

Plaintiff also related how her condition restricts her activities at home and with her family [TR 50-51]. Plaintiff indicated that her husband essentially takes care of running the household [TR 50-52]. Plaintiff further testified that she drives her daughter to school and then lays down for the remainder of the day until her husband gets home [TR 50-51]. Plaintiff does not do any grocery shopping; however, she does like to get out and walk around the block and she believed that she could lift no more than five pounds, and has anxiety attacks [TR 51-53].

Plaintiff's husband also testified at Hearing [TR 55-61]. He relayed the changes in his wife following her surgery, and her inability to contribute now in completion of household tasks [TR 57-61]. He also opined that Plaintiff was limited in her ability to sit for extended periods of time and could walk for "just a little ways" [TR 59-60]. He also testified that Plaintiff "very much" has problems with depression [TR 60].

### b. *VE's Testimony*

The VE also offered testimony at Hearing in response to questions about Plaintiff's work history and hypotheticals posed by the ALJ [TR 62-70]. Relevant herein, the VE testified that Plaintiff had prior work experience as a detention officer, which under the DOT corresponded

---

³ The Court notes that the Hearing transcript refers to Drs. Zulqarnain and Moolamalla as "Dr. Muhammad Zophram" and "Dr. Ramine Lu Mala" respectively based on phonetic pronunciation [TR 46].

most closely to an accounting clerk (DOT code 216.482-010) [TR 63]. The ALJ then presented the following hypothetical to the VE:

> I'd ask you to assume a hypothetical individual of the claimant's age and education and with the past jobs that you have described. Further assume that the hypothetical individual is limited to the sedentary exertional level. The hypothetical individual should occasionally climb – can occasionally climb ladders, ropes, scaffolds and crawl, frequently climb ramps and stairs, balance stoop, kneel and crouch. The hypothetical individual can understand, remember, and carry out detailed but not complex instructions, make decisions, attend and concentrate for adequately extended periods, accept instructions, interact with others and respond appropriately to changes in routine work setting.

[TR 63-64]. The ALJ then asked whether such a hypothetical individual could perform any of Plaintiff's past work and the VE answered, "[n]o" [TR 64]. The ALJ then inquired whether such a hypothetical individual could perform other work [TR 64]. The VE advised that the hypothetical individual would be able to perform the job of receptionist (DOT code 237.367-038) and information clerk (DOT code 237.367-028) [TR 64-65]. The ALJ next amended the hypothetical to include additional limitations, namely that the hypothetical individual is:

> [L]imited again to the sedentary exertion level, should never climb ladders, ropes, and scaffolds, occasionally climb ramps and stairs, and also occasionally crawl, balance, stoop, kneel, and crouch . . . [and] the same semi skilled mental residual functional capacity as in hypo number one.

[TR 65]. The VE responded that such an individual could not perform Plaintiff's past work, but could still perform each of the other jobs identified in connection with hypothetical number one [TR 65-66]. Plaintiff's counsel cross-examined the VE, specifically inquiring whether the jobs identified could be performed if a hypothetical person were to miss four days per month of work [TR 67-70]. The VE answered in the negative [TR 69-70]. Plaintiff's counsel further inquired whether the hypothetical individual could perform the jobs described if for up to 15% of the work day she was unable to set realistic goals or make plans independently of others, to which the VE responded that such a limitation would preclude employment [TR 70].

## III. FINDINGS OF THE ALJ

### 1. *Sequential Evaluation Process*

Pursuant to the statutory provisions governing disability determinations, the Commissioner has promulgated regulations that establish a five-step process to determine whether a claimant suffers from a disability. 20 C.F.R. § 404.1520. First, a claimant who is engaged in substantial gainful employment at the time of her disability claim is not disabled. 20 C.F.R. § 404.1520(b). Second, the claimant is not disabled if her alleged impairment is not severe, without consideration of her RFC, age, education, or work experience. 20 C.F.R. § 404.1520(c). Third, if the alleged impairment is severe, the claimant is considered disabled if her impairment corresponds to a listed impairment in 20 C.F.R., Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). Fourth, a claimant with a severe impairment that does not correspond to a listed impairment is not considered to be disabled if she is capable of performing her past work. 20 C.F.R. § 404.1520(e). Finally, a claimant who cannot return to her past work is not disabled if she has the RFC to engage in work available in the national economy. 20 C.F.R. § 404.1520(f). Under the first four steps of the analysis, the burden lies with the claimant to prove disability and at the last step the burden shifts to the Commissioner. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). If at any step the Commissioner finds that the claimant is or is not disabled, the inquiry terminates. *Id.*

### 2. *ALJ's Disability Determination*

After hearing testimony and conducting a review of the facts of Plaintiff's case, the ALJ made the following sequential evaluation [TR 12-30]. At step one, the ALJ found that Plaintiff meets the insured status requirements of the Act through December 31, 2019, and also that Plaintiff had not engaged in substantial gainful activity since July 7, 2014, the alleged onset date [TR 17]. At step two, the ALJ determined that Plaintiff had the severe impairments of degenerative disc

disease, post-laminectomy syndrome, cervical region; cervicalgia; lumbosacral spondylosis without myelopathy; and major depressive disorder [TR 17]. The ALJ determined that Plaintiff's remaining impairments for migraine headaches was not severe [TR 17]. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments, that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 [TR 18]. At step four, the ALJ determined that Plaintiff had the following residual functional capacity ("RFC"):

> [C]laimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she can never climb ladders, ropes, or scaffolds. She can occasionally climb ramps and stairs. She can occasionally crawl, balance, stoop, kneel and crouch. She can understand, remember and carry out detailed but not complex instructions, and make decisions, attend and concentrate adequately for extended periods. She can accept instructions, interact with others, and respond appropriately to changes in a routine work setting.

[TR 19-20]. Continuing the step four analysis, the ALJ found that Plaintiff is unable to perform any past relevant work [TR 24]. At step five, the ALJ found, considering Plaintiff's age, education, work experience, and residual functional capacity, that there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform, such as receptionist, information clerk, and appointment clerk [TR 25-26]; and, accordingly, ruled that Plaintiff had not been disabled from July 7, 2014 through September 7, 2016, the date of the ALJ's decision [TR 25-26].[4]

## STANDARD OF REVIEW

In an appeal under § 405(g), this Court must review the Commissioner's decision to determine whether there is substantial evidence in the record to support the Commissioner's factual

---

[4] Although the ALJ indicates in bold that Plaintiff has not been under a disability between July 7, 2014 and the date of the decision, the paragraph immediately following states Plaintiff has not been under a disability between August 17, 2014 and the date of the decision.

MEMORANDUM OPINION– Page 9

findings and whether the Commissioner applied the proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985); *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983). This Court cannot reweigh the evidence or substitute its judgment for that of the Commissioner. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995). Additionally, any conflicts in the evidence, including the medical evidence, are resolved by the ALJ, not the reviewing court. *Carry v. Heckler*, 750 F.2d 479, 484 (5th Cir. 1985).

The legal standard for determining disability under Title II of the Act is whether the claimant is unable to perform substantial gainful activity for at least twelve months because of a medically determinable impairment. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *see also Cook*, 750 F.2d at 393. "Substantial gainful activity" is determined by a five-step sequential evaluation process, as described above. 20 C.F.R. § 404.1520(a)(4).

## ANALYSIS

Plaintiff argues that the ALJ improperly rejected the opinion(s) of Plaintiff's treating physicians—Dr. Zulqarnain and Dr. Moolamalla—without first conducting a complete 20 C.F.R. § 404.1527(c) factor analysis [Dkt. 12 at 12-13].[5] Plaintiff further argues, in conclusory fashion, that the ALJ had a duty to recontact one of these physicians, Dr. Zulqarnain [Dkt. 12 at 13-14]. The Commissioner argues that the ALJ did consider each of the relevant factors, "narratively" addressing them in her decision, and, therefore, substantial evidence supports the ALJ's decision

---

[5] 20 C.F.R. § 404.1527 has been revised several times since the Fifth Circuit's opinions in *Newton* and in *Martinez* and those courts' reference to subsection (d)(2) refer to the factors present at subsection (c)(2) of 20 C.F.R. § 404.1527. *Compare* 20 C.F.R. § 404.1527 (effective to July 31, 2006) *with* 20 C.F.R. § 404.1527 (Aug. 24, 2012). The Court further notes that for all claims filed on or after March 27, 2017, the Rules in § 404.1520c (not 1527) apply.

to assign little/partial weight to Plaintiff's treating physicians, and also that no duty to recontact a claimant's treating physician exists [Dkt. 13 at 10-12].

## *ALJ Afforded Proper Weight to the Medical Opinions of Record*

### *Requirements for Giving Weight to Treating Physician*

The law is clear that "a treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000); *see also Esparza v. Berryhill*, No. 3:17-CV-154-L-BK, 2017 WL 6513634, at *4–6 (N.D. Tex. Nov. 27, 2017), *report and recommendation adopted,* 3:17-CV-154-L-BK, 2017 WL 6497898 (N.D. Tex. Dec. 19, 2017) (quoting *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) (standing for same principle)). The ALJ may give little or no weight to a treating source's opinion if good cause is shown. *Newton*, 209 F.3d at 455–56. The Fifth Circuit in *Newton* described good cause as where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence. *Id.* at 456. "[A]bsent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." *Id.* at 453. The six factors (hereinafter the "relevant factors") that must be considered by the ALJ before giving less than controlling weight to the opinion of a treating source are: (1) the length of treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) the support of the source's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the

source. *See* 20 C.F.R. § 404.1527(c); *Newton*, 209 F.3d at 456. To be clear, "the *Newton* court limited its holding to cases where the ALJ rejects the sole relevant [treating or examining] medical opinion before it." *Qualls v. Astrue*, 339 F. App'x 461, 467 (5th Cir. 2009); *accord Kneeland v. Berryhill*, 850 F. 3d 749, 760 (5th Cir. 2017). Thus, where there are competing opinions of examining physicians, the ALJ need not necessarily set forth his analysis of the relevant factors when declining to give controlling weight to a treating physician. *See Qualls*, 339 F. App'x at 466-67; *Kneeland*, 850 F.3d at 760.

### *Weight Given to Drs. Zulqarnain and Moolamalla*

The ALJ's decision states that the ALJ "[gave] partial weight" to the opinions of treating physicians, Dr. Zulqarnain and Moolamalla [TR 22-23].[6] In advance of such assignment of weight, the decision generally states:

> As for the opinion evidence, the record includes several opinions from the claimant's treating physician and psychiatrist. Generally, more weight is afforded to the opinion of a treating source as the treating source is most often in the best position to provide a detailed, longitudinal picture of the claimant's medical impairments and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings or one-time examinations (20 CFR 404.1527). If a treating source's medical opinion is well-supported and consistent with the other substantial evidence in the case record, it must be given controlling weight (SSR 96- 2p). *When a treating source opinion is not afforded controlling weight, the following factors will be considered: the length of the treatment relationship and the frequency of treatment, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion, any relevant specialty of the treating source, and other relevant factors (20 CFR 404.1527).*

[TR 23] (emphasis added).

---

[6] Medical source statements submitted by treating sources are opinions entitled to special significance and may be entitled to controlling weight. *See Peal v. Comm'r of Social Sec. Admin.*, No. 3:10-cv-01760BF, 2011 WL 942781, at *9 (N.D. Tex. Mar. 18, 2011) ("A medical source statement is a medical opinion...about what an individual can still do despite a severe impairment(s), in particular about an individual's physical or mental abilities to perform work-related activities on a sustained basis.") (internal quotations and citations omitted).

To reiterate, Plaintiff contends that the ALJ failed to properly consider each of these "relevant factors in her decision" [Dkt. 12 at 8, 12]. The Court disagrees. First, the ALJ expressly weighed each of the medical source statements of Dr. Zulqarnain and Dr. Moolamalla, extensively detailing the opinions contained in the medical source statements, and further stating (as to each) in her Notice of Decision that she found the opinions to be inconsistent with the remaining record evidence.[7] Neither party disputes that, because the ALJ failed to identify any contradictory first-hand evidence from another treating or examining physician, the ALJ was required to correctly apply the factor analysis in the instant case. *See Osborn v. Berryhill*, No. 3:16-CV-44-B-BN, 2017 WL 2312910, at *3–4 (N.D. Tex. May 11, 2017 (Horan, J.)), *report and recommendation adopted,* No. 3:16-CV-44-B-BN, 2017 WL 2306581 (N.D. Tex. May 26, 2017) (citing 209 F.3d at 456). However, a mechanical recitation of the relevant factors is not necessary for the Court to find the ALJ has sufficiently discussed the factors (although explicit consideration may be the better practice). The sufficiency or lack thereof of an analysis under 20 C.F.R. § 1527(c)(2) is a fact-based analysis. Generally, courts in the Fifth Circuit have found an ALJ's analysis under 20 C.F.R. § 404.1527(c)(2) to be sufficient where: (1) good cause was shown; (2) there was implicit (if not explicit) consideration of each of the relevant factors; and (3) failure to address the factors was harmless error. *See e.g. Colegrove v. Colvin*, No. 4:14-CV-798-A, 2015 WL 9582909, at *9 (N.D. Tex. Dec. 14, 2015), *report and recommendation adopted*, No. 4:14-CV-798-A, 2015 WL

---

[7] The only other opinions that the ALJ explicitly assigned weight to were the opinions of the non-examining SAMCs [TR 24]. The ALJ indicated that she assigned the SAMCs' opinions "great weight" due to the consistency with the record as a whole [TR 24]. A contradictory opinion of a non-examining source, such as a SAMC, does not permit the ALJ to bypass the relevant factor analysis. *See Bias v. Berryhill*, No. 3:16-cv-3050-N-BH, 2018 WL 1274883, at * 8 (N.D. Tex. Feb. 14, 2018) (indicating that an opinion from a non-examining SAMC is not a competing source opinion). Moreover, recent opinions at the district court level indicate that perceived inconsistences in a treating physician's own record also do not constitute a competing opinion sufficient to bypass a relevant factor analysis. *Esparza v. Berryhill*, No. 3:17-CV-154-L-BK, 2017 WL 6513634, at *5 (N.D. Tex. Nov. 27, 2017), *report and recommendation adopted*, No. 3:17-CV-154-L-BK, 2017 WL 6497898 (N.D. Tex. Dec. 19, 2017) (quoting *Perry v. Colvin*, No. 13-CV-2252-P, 2015 WL 5458925, at *9 (N.D. Tex. Sept. 17, 2015)).

MEMORANDUM OPINION– Page 13

9581835 (N.D. Tex. Dec. 30, 2015) (finding ALJ weighed all relevant factors); *Birge v. Colvin*, No. 3:12-cv-1777, 2013 WL 552669 (N.D. Tex. Sept. 30, 2013) (ALJ's narrative discussion shows that he properly considered relevant factors); *Chess v. Astrue*, No. CIV.A. H-10-0607, 2011 WL 11048249, at *5 (S.D. Tex. Feb. 2, 2011) (stating ALJ carefully went through each of the factors in his assessment); *Condor v. Astrue*, No. 3:09-cv-1751, 2011 WL 1085315, *4 (N.D. Tex. Mar. 23, 2011) ("[W]hile the ALJ may not have specifically addressed each of the factors in perfect narrative fashion, there was adequate consideration of [each] of the listed factors."); *Bentley v. Colvin*, No. 13-CV-4238-P, 2015 WL 5836029, at *4-10 (N.D. Tex. Sept. 30, 2015) (affirming ALJ's determination as to treating physician's lack of weight where any failure to consider the relevant factors was harmless error). To that end, an analysis of some of the factors, but omission of others, does not comply with *Newton*'s requirement "that an ALJ is required to consider *each* of the § 404.1527(d) factors before declining to give any weight to the opinions of the claimant's treating specialist." *Patino v. Colvin*, No. 3:15-CV-618-BF, 2016 WL 1664912, at *7 (N.D. Tex. Apr. 25, 2016) (finding ALJ considered some relevant factors, but omission of three factors was error).

Here, the ALJ did properly engage in consideration of the relevant factors, discussing the factors narratively and/or otherwise implicitly considering them. The first relevant factor is the length of the treatment relationship 20 C.F.R. § 404.1527(c). As to Dr. Zulqarnain,[8] the ALJ considered this factor by noting that "[Dr. Zulqarnain] is a treating source, who has treated the claimant since 2012" [TR 22]. Regarding the second factor, the ALJ did not explicitly mention the frequency of Dr. Zulqarnain's examinations, but she did specifically cite to the dates of each of the medical source statements (over the course of multiple pages), as well delineate the dates of

---

[8] The Court notes that the ALJ mistakenly refers to Dr. Zulquarnain as Dr. Zulgamain throughout the decision.

Dr. Zulqarnain's remaining treatment notes, reflecting an awareness of the frequency with which they met [TR 21-23]. In considering the third factor, the ALJ expressly noted in two locations that Dr. Zulqarnain is a "treating source" [TR 22]. In addition, in analyzing the supportability and consistency of the medical opinions with the record as a whole, the ALJ noted (in relevant part):

> (1) [Dr. Zulqarnain's] opinion is given little weight as it inconsistent with the overall evidence of record, including his own treatment notes, which show that the claimant experienced pain relief and increased ability to perform daily activities;
>
> (2) Dr. [Zulqarnain] did not provide specific function by function limitations to support his generalized opinion;
>
> (3) [W]hile Dr. [Zulqarnain] noted that the onset of the claimant's disabling condition was 2012, the claimant engaged in substantial gainful activity following her surgery;
>
> (4) [Dr. Zulqarnain's] opinion regarding the claimant's off-task behavior, need for breaks, absences, and other postural limitations is given less weight. These limitations are not consistent with the claimant's medical records. Indeed, despite the claimant's report of average pain from eight to nine, she has maintained normal attention, concentration, and memory during examinations- behavior uncharacteristic of an individual experiencing excruciating pain; and
>
> (5) [T]he medical record does not support Dr. [Zulqarnain's] other extreme limitations. For example, the claimant's activities of daily living, which include driving her daughter to and from school, spending time out of her home with friends, and visiting her mother, do not suggest a need to elevate her legs 100 percent of the time. Moreover, the medical record confirms that the claimant has sustained a normal gait without the use of any assistive device, and normal range of motion and motor functioning at the lower extremities. The record does not show edema or radiating pain in the lower extremities . . . the claimant was stable on her medication with no side effects and active with activities of daily living.

[TR 22-23]. Similarly, the ALJ narratively examined Dr. Moolamalla's opinions, detailing that he was a treating source, specializing in psychiatry, identifying the dates of the medical source opinions and again discussing at length the supportability and consistency factors [TR 22-24].

Although not a mechanical recitation, upon review and consideration of the record as a whole, the ALJ's narrative discussion shows that she considered each relevant factor in performing

her analysis. Aside from listing the relevant factors and blanketly proclaiming that the ALJ did not properly consider the same in her analysis, Plaintiff makes no specific argument, nor does she explain which factor is lacking and/or why the above does not adequately satisfy the requirements of *Newton*. The Court finds that the ALJ sufficiently analyzed the relevant factors and that remand is not required on this issue.

## *No Duty to Recontact*

Plaintiff also contends that the ALJ had a mandatory duty to recontact Dr. Zulqarnain regarding his opinion [Dkt. 12 at 13-14]. As Commissioner points out, the requirement to recontact the treating physician has been abrogated by statute, 20 C.F.R. § 404.1512(c), which reflects a discretionary standard (rather than mandatory) concerning contacting a treating physician for additional information. *See Stancle v. Colvin*, No. 4:15-cv-405-CAN, 2016 WL 3172784, *14 (E.D. Tex. June 7, 2016) (citing *Bentley v. Colvin*, No. 13-CV-4238-P, 2015 WL 5836029, at *5 (N.D. Tex. Sept. 30, 2015) (recognizing 20 C.F.R. § 404.1512(e) has been superseded by statute)). Moreover, the Fifth Circuit has reaffirmed that an ALJ is not required to adopt an RFC directly from a medical source statement, as that would nullify the ALJ's role as fact-finder. *See Fontenot v. Colvin*, 661 F. App'x 274, 277 (5th Cir. 2016). Recent courts considering the discretionary duty to recontact have found that, barring any discrepancy or inconsistency in the medical evidence that could materially affect the outcome of the ALJ's disability determination, the ALJ is not required to recontact a medical source. *See e.g. Givens v. Berryhill*, No. 4:17-CV-00145-Y-BP, 2018 WL 1955289, at *5 (N.D. Tex. Mar. 30, 2018), *report and recommendation adopted*, No. 4:17-CV-145-Y, 2018 WL 1942385 (N.D. Tex. Apr. 25, 2018) ("The Regulations only require the ALJ to request more evidence if the evidence from the treating physician or psychologist or other medical source is inadequate."). Plaintiff does not explain or allege what points of Dr. Zulqarnain's opinion need clarifying or what additional information could or would have been

provided materially affecting the outcome in the instant case. *See January v. Astrue*, 400 F. App'x 929, 2010 (5th Cir. Nov. 5, 2010); *Ruffins v. Colvin*, CV 14-754-RLB, 2016 WL 617445, at *6 (M.D. La. Feb. 16, 2016). Thus, Plaintiff has not met his burden to demonstrate prejudicial harm with respect to this point of error.

## CONCLUSION

"The Commissioner's decision is granted great deference and will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the Commissioner's decision or finds that the Commissioner made an error of law." *Legget v. Chater*, 67 F.3d 558, 565-66 (5th Cir. 1995). Having reviewed the record, this Court finds that the record demonstrates that the ALJ correctly applied the applicable legal standards, afforded proper weight to the medical opinions in the record, and that the decision of Commissioner should be affirmed. Accordingly, it is

**ORDERED** the above-entitled Social Security action is **AFFIRMED**.

**SIGNED this 12th day of March, 2019.**

_____
Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE